

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ALICIA JARAMILLO ZAVALA, | ) | No. CV 13-3900-PLA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 10, 2013, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits.  Plaintiff filed a First Amended Complaint on June 25, 2013.  The parties filed Consents to proceed before the undersigned Magistrate Judge on July 23, 2013, and January 22, 2014.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 14, 2014, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on September 7, 1962.  [Administrative Record ("AR") at 54.]  She has some college education and past relevant work experience as an administrative assistant and a claims representative.  [AR at 15, 32-33, 135, 143-48, 159-64.]

On June 28, 2011, plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning on June 17, 2011.  [AR at 8, 111-19, 130.]  After her application was denied initially, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 8, 58-62, 65-66.]  A hearing was held on April 4, 2012, at which time plaintiff appeared with a non-attorney representative and testified on her own behalf.  [AR at 8, 28-53.]  A medical expert ("ME") and a vocational expert ("VE") also testified.  [AR at 8, 37-52.]  On April 25, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from June 17, 2011, through the date of the decision.  [AR at 8-16.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 25.]  When the Appeals Council denied plaintiff's request for review on April 3, 2013, the ALJ's decision became the final decision of the Commissioner.  [AR at 20-22]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

1  1998) (same).   When determining whether substantial evidence exists to support the

2  Commissioner's decision, the Court examines the administrative record as a whole, considering

3  adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001);

4  see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must

5  consider the entire record as a whole and may not affirm simply by isolating a specific quantum

6  of supporting evidence.") (internal quotation marks and citation omitted).   "Where evidence is

7  susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan,

8  528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin.,

9  466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the

10  ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

11

12  **IV.**

13  **THE EVALUATION OF DISABILITY**

14  Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

15  to engage in any substantial gainful activity owing to a physical or mental impairment that is

16  expected to result in death or which has lasted or is expected to last for a continuous period of at

17  least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

18  1992).

19

20  **A.     THE FIVE-STEP EVALUATION PROCESS**

21  The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

22  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

23  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

24  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

25  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

26  substantial gainful activity, the second step requires the Commissioner to determine whether the

27  claimant has a "severe" impairment or combination of impairments significantly limiting her ability

28  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the date of her application, June 17, 2011.[1] [AR at 10.] At step two, the ALJ concluded that plaintiff has the severe impairments of "fibromyalgia, history of lung infiltrates and microscopic polyangiitis." [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.[2] [AR at 11.] The ALJ further found that plaintiff retained the residual functional

---

[1]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. [AR at 10.]

[2]   See 20 C.F.R. pt. 404, subpt. P, app. 1.

4

capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b)[4], with certain limitations.  Specifically, the ALJ determined:

> [plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand and walk six hours out of an eight hour day with normal breaks; she is precluded from climbing of ladders, ropes or scaffolds; she can occasionally climb stairs and ramps; she can occasionally balance, stoop, kneel, crouch and crawl; she is precluded from sustained gripping and handling; she can perform occasional gripping and handling; she should avoid exposure to unprotected heights; she should not work around heavy machinery or fast moving parts; she should avoid exposure to concentrated fumes and other irritants; and she should avoid exposure to extreme cold.

[AR at 11.] At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work experience as an administrative assistant and as a claims representative.  [AR at 15.] Accordingly, the ALJ determined that plaintiff was not under a disability from June 17, 2011, through the date of this decision.  [AR at 8, 16.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred in: (1) rejecting the opinions of plaintiff's treating physicians; (2) assessing plaintiff's obesity; and (3) assessing the credibility of plaintiff and plaintiff's daughter.  [Joint Stipulation ("JS") at 2-6, 11-13, 15-17, 22-23.]  As explained below, the Court agrees with plaintiff, in part, and remands for further proceedings.

---

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[4]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b) & 416.967(b).

**ALJ ERRED IN REJECTING OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS**

Plaintiff contends that the ALJ erred in failing to assign "controlling weight to [the opinions of] plaintiff's treating physicians," Dr. Louis Zucker and Dr. Silvia Colazzo.  [JS at 2-6, 11-12.]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating . . . physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Ryan, 528 F.3d at 1198.  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725.  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

In a treatment note dated June 23, 2010, Dr. Zucker found that plaintiff's shoulders "only forward flex to 90 degrees secondary to pain," and that plaintiff had "some lower anterior cervical pain over the vertebral bodies."  [AR at 190.]  He reported that plaintiff had "[p]olyarthritis with positive [perinuclear anti-neutrophilic cytoplasmic antibodies ('p-ANCA')] and pulmonary infiltrate, which has since resolved with scarring," "[h]ypovitaminosis," "[c]ervical strain with referred pain to shoulders, and loss of motion in shoulders, possibly secondary to polyarthritis," "[f]ibromyalgia," and "[h]ypertension."  [AR at 190-91.]

In a treatment note dated July 7, 2010, Dr. Collazo assessed plaintiff with "[b]enign essential hypertension which is inadequately controlled," and "Type II diabetes mellitus which is well-controlled."  [AR at 196-97.]

In a treatment note dated August 25, 2010, Dr. Zucker indicated that "overall," plaintiff "continues to fluctuate," and that plaintiff's physical examination revealed, among other things, "multiple areas of tenderness in the neck and fibromyalgia tender points remain present."  [AR at 205.]  He recorded that plaintiff has, among other conditions, "[m]icroscopic polyangiitis with positive ANCA," "[p]ossible overlap with left olecranon nodule and synovitis and two polyarthritis," "[h]ypovitaminosis D," "[f]ibromyalgia," "[c]ervical strain with retained shoulders and trapezii," and "[o]steoporosis."  [AR at 206.]

In a treatment note dated October 6, 2010, Dr. Collazo assessed plaintiff with, among other things, "[b]enign essential hypertension which is improving," "[r]eactive airway disease," "intermittent wheezing," "Type II diabetes mellitus which is well-controlled," "[m]icroscopic polyarteritis nodosa," "[m]oderate fibromyalgia which is improving[,] intermittent flares continue[,] last flare-up on [May 11, 2010]," and "[f]atigue."  [AR at 215-17.]

In a treatment note dated November 24, 2010, among other things, Dr. Zucker repeated his assessment that plaintiff had fibromyalgia and osteoporosis.  [AR at 227-28.]

In a treatment note dated December 8, 2010, Dr. Collazo assessed plaintiff with "[b]enign essential hypertension which is improving;" "Type 2 diabetes mellitus which is well controlled;" and "[m]oderate fibromyalgia which is improving[,] intermittent flares continue."  [AR at 233-34.]

In a treatment note dated February 16, 2011, Dr. Zucker assessed plaintiff with, among other conditions, "ANCA positive vasculitis with pulmonary infiltrates and a suggestion of renal involvement," "[f]ibromyalgia symptoms," "[h]ypovitaminosis," and "[d]rug induced osteoporosis." [AR at 243-44.]

In a treatment note dated March 16, 2011, Dr. Collazo noted that plaintiff was "[d]oing much better than last visit and continues to have fibromyalgia flareups which she managed with current pain medicines."  [AR at 253.]  She assessed plaintiff with, among other things, "[s]evere arthralgias which is improving," "[b]enign essential hypertension which is improving," "Vitamin D

1  deficiency ... which is improving," and "Type 2 diabetes mellitus which is well-controlled." [AR at

2  255.]

3  In a treatment note dated May 2, 2011, Dr. Collazo noted plaintiff's "acute distress due to

4  bodyache," and assessed plaintiff with "[r]eactive airway disease," "[m]icroscopic polyarteritis

5  nodosa," and "[u]pper respiratory infection." [AR at 256-57.]

6  In a treatment note dated May 18, 2011, Dr. Zucker conducted a physical exam, and

7  reported, among other things, that "[f]ibromyalgia tender points are present." [AR at 265.] He

8  assessed plaintiff with "[m]icroscopic polyangiitis with past history of pulmonary involvement,"

9  "[d]rug induced osteoporosis," "[h]ypovitaminosis," "[p]lantar fasciitis," and "[f]ibromyalgia," with

10  regard to which "[s]ome symptoms persist. [Id.]

11  In a treatment note dated June 14, 2011, Dr. Collazo assessed plaintiff with "[b]enign

12  essential hypertension which is well-controlled," "[v]itamin D deficiency ... which is improving," and

13  "Type 2 diabetes mellitus which is well-controlled." [AR at 269-71.]

14  In an Internal Medicine Evaluation completed on August 15, 2011 [AR at 279-84], Dr.

15  Rocely Ella-Tamayo examined plaintiff and diagnosed her with diabetes mellitus, hypertension,

16  rheumatological disease, and obesity. [AR at 283.]  She opined that plaintiff is "restricted in

17  pushing, pulling, lifting, and carrying to about 50 pounds occasionally, and about 25 pounds

18  frequently," and further opined that plaintiff "is able to stand and walk 6 hours out of an 8-hour

19  workday with normal breaks." [AR at 283-84.]

20  On August 19, 2011, Dr. L.C. Chiang, a nonexamining physician, completed a Physical

21  Residual Functional Capacity Assessment and opined that plaintiff was limited to lifting and/or

22  carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking with normal

23  breaks for a total of "about 6 hours in an 8-hour workday[;]" and sitting with normal breaks for a

24  total of "about 6 hours in an 8-hour workday." [AR at 286-92.]

25  In a treatment note dated September 26, 2011, Dr. Collazo assessed plaintiff with, among

26  other things, "[m]ild-moderate microscopic polyarteritis nodosa which is improving," and

27  "[m]oderate fibromyalgia which is improving." [AR at 308-09.]  She reported, with regard to

28  plaintiff's fibromyalgia, that "intermittent flares continue," and indicated that plaintiff should

"continue all current medications; [switched] from Lyrica to Gabapentin due to insurance coverage." [AR at 309.]

In a Physical Capacities Evaluation form completed on October 5, 2011 [AR at 300-06], Dr. Zucker indicated that plaintiff has a "history of joint pain, tenderness or swelling," and presents with fatigue and pulmonary fibrosis. [AR at 305-06.] He reported that plaintiff is able to sit for less than one hour during an eight-hour workday, "stand/walk" for less than one hour during an eight-hour workday, that plaintiff would "need an opportunity to alternate sitting and standing at will throughout the day," and that plaintiff is not able to "use hands adequately" to push and pull or for repetitive motion tasks such as "writing, typing, assembly, etc." [AR at 300.] Dr. Zucker opined that plaintiff can "frequently"[5] lift "0 to 5 [pounds]," "occasionally"[6] lift "6 to 10 [pounds]," and never lift more than 11 pounds; that plaintiff is "never" able to climb, balance, stoop, kneel, crouch, or crawl; that plaintiff can "occasionally" reach above shoulder level; that plaintiff is totally restricted from activities involving unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, and driving automotive equipment; and that plaintiff is "mild[ly]" restricted from exposure to dust, fumes, and gases. [AR at 301.] Dr. Zucker indicated that plaintiff "suffer[s] from fatigue for which there is a reasonable medical basis," explaining that plaintiff's "severe" fibromyalgia "prevents [plaintiff] from working full time, even in a sedentary position." [Id.] He further indicated that plaintiff additionally suffers from pain for which "there is a reasonable medical basis," that would "prevent [plaintiff] from working full time at even a sedentary position," explaining that plaintiff "[m]eets 18/18 of the [t]ender points for the diagnosis of fibromyalgia." [AR at 302.] Dr. Zucker opined that "pain and/or side effects of medication" "[s]evere[ly]" affect plaintiff's attention and concentration,

---

[5]   The form defines "frequently" as between 34 percent and 100 percent of the time during an eight-hour workday. [See AR at 301.]

[6]   The form defines "occasionally" as up to 33 percent of the time during an eight-hour workday. [See AR at 301.]

1  "[p]reclud[ing]" that "required for even simple, unskilled work tasks."[7]  [AR at 303.]  He reported

2  that plaintiff has a "history of widespread pain" that has been "present for at least 3 months," that

3  plaintiff "consistently exhibit[s] pain on palpation in at least 11 of the 18 tender point sites

4  consistent with Fibromyalgia," that plaintiff "suffer[s]" from "morning stiffness and/or stiffness after

5  sitting for a period of time, and from fatigue that is "of sufficient severity and persistence to

6  preclude full-time work, even in a sedentary position."  [AR at 304.]

7       In a letter also dated October 5, 2011, Dr. Zucker listed plaintiff's medications, including

8  those prescribed for "her severe [f]ibromyalgia."  [AR at 307.]  Dr. Zucker noted "swelling in

9  [plaintiff's] joints, secondary to the polyangiitis," and expressed "concern[] that she will develop

10  further renal and pulmonary involvement with loss of function and ultimate need for

11  hospitalization."  [Id.]  Dr. Zucker opined that, "[b]ecause of her widespread pain and joint

12  involvement," plaintiff is "presently disabled and has a very poor long-term prognosis[] if she's not

13  on medication."  [Id.]

14       In a Physical Capacities Evaluation form completed by Dr. Collazo on October 20, 2011,

15  Dr. Collazo indicated that plaintiff is able to sit for two hours during an eight-hour workday,

16  "stand/walk" for two hours during an eight-hour workday, and that plaintiff would "need an

17  opportunity to alternate sitting and standing at will throughout the day" "[d]ue to stiffness and pain."

18  [AR at 312.]  Dr. Collazo opined that plaintiff can "frequently" lift "0 to 5 [pounds]," "occasionally"

19  lift between six and twenty pounds, and can never lift more than 21 pounds.  [AR at 313.]  She

20  further opined that plaintiff is able to climb, balance, stoop, kneel, crouch, crawl, and reach above

21  shoulder level "occasionally[;]" that plaintiff is totally restricted from activities involving unprotected

22  heights and exposure to dust, fumes, and gases; and that plaintiff is "moderate[ly]" restricted from

23  activities involving "[b]eing around moving machinery," "[e]xposure to marked changes in

24  temperature and humidity," and "[d]riving automotive equipment."  [Id.]  Dr. Collazo indicated that

25  plaintiff "suffer[s] from fatigue for which there is a reasonable medical basis," explaining that

26  _____

27       [7]   Elsewhere in the same Evaluation, Dr. Zucker indicated that plaintiff's pain and/or the
     side effects of her medication have a "mild" effect, or no effect at all, on her "ability to maintain
28  attention and concentration."  [AR at 304.]

1  plaintiff's "underlying disease of Fibromyalgia and arthritic type pains" can cause plaintiff to "easily

2  become fatigued, stiff and sore[,] which can last all day if condition has flared up." [Id.]  She also

3  indicated that plaintiff suffers from pain for which "there is a reasonable medical basis," explaining

4  that plaintiff "has microscopic polyangitis [sic], which is a severe form of vasculitis," and that

5  plaintiff "requires multiple medications" for "pain and condition management," in addition to the

6  pain management medication she takes for her "severe Fibromyalgia." [AR at 314.]  Finally, Dr.

7  Collazo opined that "pain and/or side effects of medication" "[s]light[ly]" affect plaintiff's attention

8  and concentration, and that plaintiff's pain is "disabling to the extent that it would prevent [her] from

9  working full time at even a sedentary position." [AR at 314-15.]

10       In impressions of plaintiff's chest x-ray dated January 4, 2012, Dr. Chester K. Bai indicated

11  that "[t]here is an unfolded aorta noted.  There are degenerative changes of the spine visualized.

12  There are bilateral lower lung zone atelectatic bands within the elevated right hemidiaphragm.

13  Otherwise, there is no evidence of acute disease." [AR at 324.]

14       In a "Single Assessment" at LAC+USC Medical Center dated January 9, 2012 [AR at 318-

15  22], Dr. Jody C. Chuang recorded objective findings including, among other things, fibromyalgia,

16  systemic lupus erythematosus, asthma, polyarteritis nodosum, diabetes mellitus, and

17  hypertension. [AR at 321.]  In a "Problem List," Dr. Chuang indicated that plaintiff's fibromyalgia

18  had been "well controlled on cymbalta." [AR at 318.]

19       In a treatment note dated January 19, 2012, Dr. Collazo reported that plaintiff "[c]ontinues

20  to have daily bodyaches with stiffness," and assessed plaintiff with "[b]enign essential

21  hypertension which is well-controlled," "[r]eactive airway disease; exacerbation due to [upper

22  respiratory infection]," "[m]ild-moderate microscopic polyarteritis nodosa which is improving," and

23  "[m]oderate fibromyalgia which is improving; intermittent flares continue." [AR at 316-17 (omitting

24  citations).]

25       At the hearing on April 4, 2012, the ME, an internal medicine and rheumatology specialist,

26  opined that plaintiff had the residual functional capacity to lift and carry "20 pounds occasionally

27  and 10 pounds frequently," sit, stand, or walk for "six out of eight hours with normal breaks," and

28  "occasional[ly]" perform postural tasks, such as "stairs, ramps, balancing, [and] crawling." [AR at

44.][8]  The ME further opined that plaintiff has occasional limitations with regard to "gripping and handling," and certain environmental limitations.  [AR at 44-45.]  Specifically, the ME limited plaintiff to "[n]o exposure to unprotected heights;" "no working around heavy machinery or rapidly moving parts; or ... exposure to concentrated fumes, and other irritating aerosols;" and "no exposure to extreme cold."  [AR at 45.]  The ME also testified that he "accept[ed]" Dr. Zucker's indication that plaintiff has fibromyalgia.  [AR at 46.]

In his decision, the ALJ assigned "little weight" to the opinion of plaintiff's treating physician, Dr. Zucker, for "several reasons."  [AR at 14.]  Specifically, the ALJ found Dr. Zucker's opinion, "assess[ing] limitations that would preclude [plaintiff] from engaging in substantial gainful activity," to be "an opinion on an issue reserved to the Commissioner," as well as "conclusory and unsupported by the evidence of record," and "inconsistent with [Dr. Zucker's] own treatment notes, which document improvement in [plaintiff]'s condition with prescribed medical treatment."  [Id.]  The ALJ also assigned "little weight" to the opinion of plaintiff's other treating physician, Dr. Collazo, explaining that this opinion was "unsupported by the objective medical evidence" because "Dr. Collazo's notes document only 'intermittent' flare-ups of fibromyalgia" and that plaintiff's condition "was stable with medications."  [AR at 15.]  The ALJ assigned "great weight" to the ME's opinion, explaining:

> [The ME] is a rheumatologist with an awareness of all the medical evidence in the record, and he has an understanding of social security disability programs and evidentiary requirements.  Most important, his opinion regarding [plaintiff]'s functional limitations is highly credible because it is well supported by the objective medical evidence already discussed in this decision.  Specifically, there is little evidence of treatment for the period of adjudication.  Moreover, the notes document improvement in [plaintiff]'s impairments with prescribed medical treatment.

---

[8]    In his testimony regarding plaintiff's RFC, although the ME explains that he based his limitations "on the body mass index and global's [sic] assessment" [AR at 44], neither the ALJ's decision nor the rest of the record explains how the ME's opined limitations are supported by that or any other evidence.  [AR at 43-44; see generally, AR at 1-337.]  Rather, the ME states that he reached his RFC "globally and intuitively more than anything else."  [AR at 43.]

1    [AR at 15.]  Finally, the ALJ gave "less weight" to the opinions of examining physician Dr. Ella-

2    Tamayo and the non-examining State agency medical consultant, explaining that their opinions

3    were "inconsistent with the evidence of record."  [Id.]

4            Under the circumstances, none of the reasons provided by the ALJ for giving "little weight"

5    to the opinions of Dr. Zucker and Dr. Collazo is legally sufficient and/or supported by substantial

6    evidence.  [AR at 14-15.]  As an initial matter, even assuming the opinion of the nonexamining ME

7    constituted "substantial evidence," the Social Security regulations still require deference to the

8    treating physicians' opinions.  See 20 C.F.R. § 404.1527; Social Security Ruling ("SSR") 96-2p,[9]

9    1996 WL 374188, at *1 ("A finding that a treating source's medical opinion is not entitled to

10   controlling weight does not mean that the opinion is rejected."); Orn v. Astrue, 495 F.3d 625, 633

11   (9th Cir. 2007) ("Even if [the examining physician's] opinion were 'substantial evidence,' § 404.1527

12   still requires deference to the treating physicians' opinions.").  Under 20 C.F.R. §§ 404.1527 and

13   416.927, the Commissioner looks at the following factors in determining the weight it will give the

14   treating physician's opinion:  (1) the "[l]ength of the treatment relationship and the frequency of

15   examination[]" by the treating physician; and (2) the "[n]ature and extent of the treating

16   relationship[]" between the patient and the treating physician.  Id. at §§ 404.1527(c)(2)(i)-(ii),

17   416.927(c)(2)(i)-(ii).  "Additional factors relevant to evaluating any medical opinion, not limited to

18   the opinion of the treating physician, include the amount of relevant evidence that supports the

19   opinion and the quality of the explanation provided; the consistency of the medical opinion with the

20   record as a whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as

21   the degree of understanding a physician has of the Administration's 'disability programs and their

22   evidentiary requirements' and the degree of his or her familiarity with other information in the case

23   record."  Orn, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(3)-(6)) (brackets in original).

24

25        [9]   "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's
26   implementing regulations and the agency's policies.  SSRs are binding on all components of the
     [Social Security Administration].  SSRs do not have the force of law.  However, because they
27   represent the Commissioner's interpretation of the agency's regulations, we give them some
     deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."
28   Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

Under the factors set forth in §§ 404.1527, it is clear that Dr. Zucker's and Dr. Collazo's opinions should have been afforded greater weight than the opinions of the non-examining, non-treating physician.  For example, the treating relationship plaintiff had with Dr. Zucker and Dr. Collazo provides a "unique perspective" on plaintiff's condition.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Orn, 495 F.3d at 633.  In addition, the nature and extent of these physicians' relationship with plaintiff adds significant weight to their opinions.  See 20 C.F.R. § 404.1527(c)(2)(i)-(ii); Orn, 495 F.3d at 633.  Plaintiff has been treated on a consistent basis by Dr. Zucker at least since June 2010, and by Dr. Collazo since July 2010.  [See AR at 186-234, 236-71, 300-10, 312-17.]

The "[s]upportability" of plaintiff's treating physicians' opinions adds further weight.  See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  Viewed in its entirety, the record provides ample support for plaintiff's treating physicians' opinions.  For example, although Dr. Zucker's treatment notes prior to completing his Physical Capacities Evaluation form do not contain specific functional limitations, they do contain multiple diagnoses of, among other things, plaintiff's fibromyalgia.[10] [See, e.g., AR at 190-91 (treatment note dated June 23, 2010, diagnosing plaintiff with fibromyalgia, among other conditions); 205-06 (treatment note dated August 25, 2010, noting that plaintiff had "multiple areas of tenderness in the neck," and that "fibromyalgia tender points remain present," and recording that plaintiff takes "a large amount of medicine for her fibromyalgia"); 227-

---

[10]  Fibromyalgia is a syndrome that "is poorly understood within much of the medical community."  Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citation omitted).  Significantly, there is no known cause or cure, and fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms."  Id. at 590; Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.").  Courts have noted that there are no laboratory or diagnostic tests that can confirm the presence of fibromyalgia.  Benecke, 379 F.3d at 590 (citations omitted); Sarchet, 78 F.3d at 306; Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003).  Hence, fibromyalgia is often diagnosed by eliminating other possible conditions and confirming the presence of the disease's symptoms: widespread pain existing for at least three months, fatigue, disturbed sleep, stiffness, and tenderness in at least eleven of eighteen specified sites ("trigger points") on the body.  Brosnahan, 336 F.3d at 672 n.1 ("[d]iagnosis [of fibromyalgia] is usually made after eliminating other conditions"); Preston v. Sec. of Health and Human Servs., 854 F.2d 815, 818 (6th Cir. 1998) ("no objective tests . . . can conclusively confirm [fibromyalgia]"); Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) (listing fibromyalgia's symptoms (quoting Sarchet, 78 F.3d at 306)).

28 (treatment note dated November 24, 2010, repeating assessment that plaintiff has fibromyalgia and assessing plaintiff with osteoporosis); 243-44 (treatment note dated February 16, 2011, assessing plaintiff with, among other things, "[f]ibromyalgia symptoms," and "[d]rug induced osteoporosis"); 307 (letter written by Dr. Zucker, dated October 5, 2011, noting plaintiff's "severe [f]ibromyalgia," "swelling in her joints," and "widespread pain").] Thus, Dr. Zucker's opinion was based on his steady confirmation of the generally accepted symptoms of fibromyalgia, including positive tenderness at fibromyalgia tender points. Further, Dr. Zucker's treatment notes reflect not only that plaintiff was prescribed a "large amount" of medication for her fibromyalgia symptoms, but that she was additionally diagnosed with "[d]rug induced osteoporosis." [AR at 205-06, 243-44.]  Moreover, on the Physical Capacities Evaluation form, Dr. Zucker described plaintiff's fibromyalgia as "severe," indicated what medications he prescribed as treatment for the condition, and reported "generalized positive tender points," as well as that plaintiff met "18/18 of the [t]ender points for the diagnosis of fibromyalgia," among other things. [AR at 300-03.] Taken together, the Court finds that Dr. Zucker's treatment notes and Physical Capacities Evaluation form, establishing the presence of plaintiff's fibromyalgia, as well as the impact of plaintiff's treatment medications, support his opinion regarding plaintiff's functional limitations. See Teran v. Astrue, 499 Fed.Appx. 660, 663 (9th Cir. 2012) (remanding to ALJ for determination of onset date and award of benefits where ALJ improperly "accepted [treating physician's] fibromyalgia diagnosis but rejected his opinion as to the functional limitations resulting therefrom" without providing specific and legitimate reasons).

In addition, Dr. Collazo's treatment notes diagnosing plaintiff's fibromyalgia support her opinion regarding plaintiff's diagnoses and functional limitations.  [See, e.g., AR at 215-17 (treatment note dated October 6, 2010, assessing plaintiff with, among other conditions, moderate fibromyalgia "which is improving," and fatigue); 233-34 (treatment note dated December 8, 2010, assessing plaintiff with, among other things, moderate fibromyalgia "which is improving," but noting continuing "intermittent flares"); 253-55 (treatment note dated March 16, 2011, noting that plaintiff "continues to have fibromyalgia flareups which she managed with current pain medications," and assessing plaintiff with "[s]evere arthralgias which is improving"); 256-57 (treatment note dated

1    May 2, 2011, noting plaintiff's "acute distress due to bodyache"); 308-09 (treatment notes dated

2    September 26, 2011, assessing plaintiff with, among other things, moderate fibromyalgia "which

3    is improving," but noting continuing "intermittent flares"); 316-17 (treatment note dated January

4    19, 2012, reporting that plaintiff "[c]ontinues to have daily bodyaches with stiffness," and assessing

5    plaintiff with, among other things, moderate fibromyalgia "which is improving," but noting

6    continuing "intermittent flares").]

7         In addition, the "consistency" of plaintiff's treating physicians' opinions with the record as

8    a whole merits additional weight. See 20 C.F.R. §§ 404.1527(c)(4); Orn, 495 F.3d at 634.  Indeed,

9    both of plaintiff's treating physicians' opinions are consistent with and supported by the opinions

10   and treatment notes of each other, in particular with regard to plaintiff's fibromyalgia condition.

11   [See, e.g., AR at 186-234, 236-71, 300-10, 312-17.]  Plaintiff's treating physicians' opinions are

12   further supported by other medical evidence in the record.  [See, e.g., AR at 318 ("Single

13   Assessment" of Dr. Chuang, at LAC+USC Medical Center, dated January 9, 2012, in which

14   objective findings included plaintiff's fibromyalgia).][11]  Finally, the specialization of Dr. Zucker in

15   rheumatology [see, e.g., AR at 18, 300-06], and of Dr. Colazzo in osteopathic manipulative

16   medicine,[12] adds further weight to their opinions, which concern "medical issues related to [their]

17   . . . area[s] of specialty."  See 20 C.F.R. §§ 404.1527(c)(2)(ii), (c)(5).

18        Moreover, the Court is persuaded that the ALJ failed to provide specific and legitimate

19   reasons for rejecting the opinions of plaintiff's treating physicians.  First, the ALJ erred by rejecting

20   Dr. Zucker's opinion because it "is an opinion on an issue reserved to the Commissioner, and as

21   such it is not given any special significance."  [AR at 14.]  While the ultimate determination of

22   whether plaintiff is disabled is an issue reserved to the Commissioner, the Social Security "rules

23   provide that [ALJs] must always carefully consider medical source opinions about any issue,

24   including opinions about issues that are reserved to the Commissioner."  SSR 96-5p, 1996 WL

25

26        [11]   Dr. Zucker's diagnosis of plaintiff's fibromyalgia was also uncontested by the ME, who
27   conceded the accuracy of the diagnosis at the hearing.  [AR at 39, 46.]

28        [12]   Dr. Collazo holds a Doctor of Osteopathic Medicine degree. [See, e.g., AR at 197, 217, 234,
     255, 257, 271, 309, 315, 317.]

374183, at *2.  An ALJ must consider a treating physician's opinion on the ultimate issue of disability as he would consider a treating physician's opinion on any other issue, and "if controverted, [it] can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."  Reddick, 157 F.3d at 725; see SSR 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored.  The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

Second, the ALJ's finding that Dr. Zucker's opinion is "conclusory and unsupported by the evidence of record" because treatment notes show that plaintiff's severe fibromyalgia was "well controlled with the use of Cymbalta," misstates the record and is not supported by substantial evidence.  [AR at 14; see, e.g., AR at 317-18]; see Reddick, 157 F.3d at 722-24 (ALJ's "findings were unsupported by substantial evidence based on the record as a whole" when "[i]n essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports [and h]is paraphrasing of record material is not entirely accurate regarding the content or tone of the record."); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (citation omitted). Specifically, the ALJ cites the "Single Assessment" of plaintiff performed by an examining physician on January 9, 2012, which states that plaintiff's fibromyalgia, a condition present "since 2006," "was well controlled on cymbalta."  As an initial matter, the ALJ appears to have selectively relied on only those portions of the record that support his desired outcome.  See Reddick, 157 F.3d at 722-23; Gallant, 753 F.2d at 1456.  For example, the same Single Assessment also indicates that plaintiff "has aches and pain all over, mainly in the [bilateral lower extremities] from ankles to knees and in her hands and shoulders."  [AR at 14, 318-19.]  Moreover, while Dr. Zucker opines that plaintiff has a "very poor long-term prognosis ... if she's not on medication," his treatment notes do not support a finding that plaintiff's fibromyalgia was "well controlled" by

medication.  [See, e.g., AR at 307.]  To the contrary, Dr. Zucker's treatment notes consistently indicate that plaintiff's fibromyalgia symptoms persisted and that fibromyalgia tender points were present despite medication.  [See AR at 227-28 (treatment note dated November 24, 2010, repeating assessment of plaintiff with, among other things, fibromyalgia); 243-44 (treatment note dated February 16, 2011, noting, among other things, continued fibromyalgia symptoms); 264-65 (treatment note dated May 18, 2011, noting that "[f]ibromyalgia tender points are present," and continuing plaintiff on medication); 307 (letter from Dr. Zucker accompanying the Physical Capacities Evaluation form, noting plaintiff's "widespread pain and joint involvement," plaintiff's "very poor long-term prognosis[] if she's not on medication," and listing plaintiff's medications, including those for "her severe [f]ibromyalgia").]

Further, to the extent the ALJ rejected Dr. Zucker's opinion because it was "conclusory", this reason is belied by the record, which includes treating records containing repeated diagnoses of fibromyalgia, among other conditions.  [AR at 14; see AR at 190-91, 227-28, 243-44, 264-65, 300-07.]  For the same reasons as discussed supra, these records support Dr. Zucker's opined limitations provided in his Physical Capacities Evaluation form.  See Kager v. Astrue, 256 Fed.Appx. 919, 921 (9th Cir. 2007) ("While it is true that the notes setting forth [the treating physician]'s opinion did not themselves refer to specific limitations or clinical findings, [the treating physician]'s other treatment notes did contain objective findings supporting her opinion that [plaintiff] was unable to [perform past relevant work.]").]  Moreover, in addition to check-box answers on plaintiff's Physical Capacities Evaluation Form, Dr. Zucker also described plaintiff's fibromyalgia as "severe," indicated those medications he prescribed as treatment for the condition, and reported that plaintiff met "18/18 of the [t]ender points for the diagnosis of fibromyalgia," among other things.  [AR at 300-03.]

Third, the ALJ's finding that Dr. Zucker's opinion is "inconsistent with his own treatment notes, which document improvement in [plaintiff]'s condition with prescribed medical treatment" [see AR at 14], misstates the record and is not supported by substantial evidence.  See Reddick, 157 F.3d at 722-24; Gallant, 753 F.2d at 1456.  For example, despite ongoing medical treatment, Dr. Zucker's treatment notes repeatedly diagnose plaintiff with fibromyalgia, among other things.

[See, e.g., AR at 190-91 (treatment note dated June 23, 2010, finding that plaintiff's shoulders "only forward flex to 90 degrees secondary to pain," that plaintiff had "some lower anterior cervical pain over the vertebral bodies," "[p]olyarthritis with positive p-ANCA and pulmonary infiltrate, which has since resolved with scarring," "[h]ypovitaminosis," "[f]ibromyaligia," and "[h]ypertension"); 205-06 (treatment note dated August 25, 2010, including observation that, "overall," plaintiff "fluctuate[s]," that "fibromyalgia tender points remain present," and recording that plaintiff takes "a large amount of medicine for her fibromyalgia"); 227-28 (treatment note dated November 24, 2010, repeating assessment of plaintiff with, among other things, fibromyalgia and osteoporosis); 243-44 (treatment note dated February 16, 2011, noting, among other things, continued fibromyalgia symptoms); 264-65 (treatment note dated May 18, 2011, noting that "[f]ibromyalgia tender points are present," and continuing plaintiff on medication); 307 (letter from Dr. Zucker accompanying the Physical Capacities Evaluation form, noting plaintiff's "widespread pain and joint involvement," plaintiff's "very poor long-term prognosis ... if she's not on medication," and listing plaintiff's medications, including those for "her severe [f]ibromyalgia").] Moreover, nowhere in Dr. Zucker's treatment notes does he opine that plaintiff is more capable than provided for in his Physical Capacities Evaluation form. [See generally, AR at 190-91, 205-06, 227-28, 243-44, 264-65.]

Fourth, to the extent the ALJ cites certain treatment notes from Dr. Colazzo indicating "only 'intermittent' flare-ups of fibromyalgia" and "show[ing] that the condition was stable with medications," as an initial matter, the ALJ fails to explain how evidence that plaintiff's flare-ups were "intermittent" or that the condition was "stable" undermines Dr. Colazzo's opinion with regard to plaintiff's overall functional capacity. [AR at 15; see also AR at 312-15]; see Bales v. Colvin, 2013 WL 3449194, at *3 (C.D. Cal. July 9, 2013) (fibromyalgia "symptoms can be worse at some times than others"); see also Hemminger v. Colvin, 2014 WL 348082, at *6 (W.D. Wis. Jan. 31, 2014) ("a doctor's comment that plaintiff's fibromyalgia and arthralgia were 'stable' is of no evidentiary value unless one knows the starting point of those ailments"). Moreover, the Court finds that Dr. Colazzo's opinion with regard to plaintiff's functional limitations was nevertheless supported by her treatment notes when viewed as a whole. See Reddick, 157 F.3d at 722-24;

1   Gallant, 753 F.2d at 1456.  Specifically, Dr. Colazzo reported in treatment notes on October 6,

2   2010, December 8, 2010, and January 19, 2012, that despite some improvements with regard to

3   her fibromyalgia, plaintiff's "intermittent flares continue[d]."  [AR at 215-17, 233-34, 317.]  On

4   March 16, 2011, Dr. Colazzo noted that plaintiff "continues to have fibromyalgia flareups which she

5   manage[s] with current pain medicines."  [AR at 253.]  Dr. Colazzo again noted in a treatment note

6   on September 26, 2011, that plaintiff's "intermittent" fibromyalgia "flares" continued, and

7   accordingly continued plaintiff on "all current medications."  [AR at 309.]

8        Defendant contends that the ALJ "properly rejected" the opinions of plaintiff's treating

9   physicians "on the additional basis [that] they conflicted with other substantial evidence in the

10  record."  [JS at 9.]  In particular, defendant cites the findings of consultative examiner Dr. Ella-

11  Tamayo, who "[n]oted that [p]laintiff had a normal gait, had no inflammation or tenderness in the

12  joints of her upper or lower extremities, and had normal range of motion in all extremities."[13]  [Id.]

13  Defendant additionally argues that the ALJ's decision to give little weight to plaintiff's treating

14  physicians' opinions "is further supported by the medical expert's testimony."  [JS at 10.]  However,

15  "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision

16  based on the reasoning and factual findings offered by the ALJ -- not post hoc rationalizations that

17  attempt to intuit what the adjudicator may have been thinking."  Bray v. Comm'r of Soc. Sec.

18  Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation omitted).

19       In sum, the ALJ failed to provide specific and legitimate reasons for rejecting the opinions

20  of Dr. Zucker and Dr. Colazzo.  As a result, the ALJ's decision denying benefits is not supported

21  by substantial evidence and remand is warranted.

22

23  _____

24  [13]   Defendant contends that Dr. Ella-Tamayo's "independent examination findings alone
    constitute substantial evidence supporting the ALJ's rejection of Drs. Zucker and Collazo's more
25  restrictive findings."  [JS at 9-10.]  Even assuming Dr. Ella-Tamayo's findings -- which the ALJ
    found "inconsistent with the evidence of record" and assigned "less weight" -- constitute substantial
26  evidence, for the reasons discussed infra, the opinions of plaintiff's treating physicians are still
    accorded deference (see Orn, 495 F.3d at 633), and the ALJ is required to provide "specific and
27  legitimate reasons" supported by "substantial evidence in the record" in rejecting the contradicted
    opinions of treating physicians.  See Carmickle, 533 F.3d at 1164.
28

1

**VI.**

2

**REMAND FOR FURTHER PROCEEDINGS**

3       The Court has discretion to remand or reverse and award benefits.  <u>McAllister v. Sullivan</u>,

4   888 F.2d 599, 603 (9th Cir. 1989).   Where no useful purpose would be served by further

5   proceedings, or where the record has been fully developed, it is appropriate to exercise this

6   discretion to direct an immediate award of benefits.  <u>See</u> <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028,

7   1041 (9th Cir. 2007); <u>Benecke</u>, 379 F.3d at 595-96.  Where there are outstanding issues that must

8   be resolved before a determination can be made, and it is not clear from the record that the ALJ

9   would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is

10  appropriate.  <u>See</u> <u>Benecke</u>, 379 F.3d at 593-96.

11      Here, there are outstanding issues that must be resolved before a final determination can

12  be made.  However, in an effort to expedite these proceedings and to avoid any confusion or

13  misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

14  proceedings.  First, because the ALJ failed to provide specific and legitimate reasons for assigning

15  little weight to the opinions of plaintiff's treating physicians, Dr. Zucker and Dr. Colazzo, remand

16  is warranted for the ALJ to properly evaluate their opinions.  Next, the Court observes that, in

17  evaluating plaintiff's credibility, the ALJ found "very little" medical evidence "for the period after the

18  alleged onset date," June 17, 2011.[14]  [AR at 12.]  Accordingly, the ALJ on remand shall contact

19  plaintiff's physicians at LAC USC for any relevant medical records, and particularly for records

20  during the period after plaintiff's alleged onset date.

21      As the ALJ's reevaluation of Dr. Zucker's and Dr. Colazzo's opinions -- along with any

22  additional medical evidence from physicians at LAC USC -- may have an impact on the ALJ's step

23  two findings with regard to plaintiff's obesity, as well as on the ALJ's credibility determination, the

24

25  _____

26      [14]   At the hearing, plaintiff indicated that "when [she] lost [her] job and didn't have any
    insurance, Dr. Zucker recommended [that she] go to the L.A. County USC Medical Center [("LAC
27  USC")] to get help," where she saw a Dr. Chan.  [AR at 35.]  Plaintiff's counsel informed the ALJ
    that plaintiff had requested the records from LAC USC, but had not yet received them.  [<u>Id.</u>]  The
28  record does not include any records from Dr. Chan at LAC USC.

Court will not herein reach plaintiff's remaining contentions.[15]   [JS at 2, 12-13, 15-17, 22-23.] Plaintiff, however, shall not be precluded from raising these issues, or any other issue, on remand.

Finally, if necessary, the ALJ shall reassess plaintiff's RFC and determine, with the assistance of a VE, whether plaintiff is capable of performing past relevant work or any other work existing in significant numbers in the national economy.

### VII.

### CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 15, 2014

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[15]   Although the Court does not herein make a determination as to the ALJ's credibility finding, to the extent the ALJ found that plaintiff "admitted she stopped working because she was laid off, and not because of her medical impairments" [AR at 12], the Court finds that this misstates the record. See Reddick, 157 F.3d at 722-23; Gallant, 753 F.2d at 1456. Plaintiff testified that "a number of things" contributed to the worsening of her symptoms "a month before [she] was let go from work," and that, "[u]ltimately, [she] couldn't do [her work] anymore. [Her] body just gave out." [AR at 36.]  In her Work History Report, plaintiff explained that her work was "very stressful," and that she "had a hard time with the speed needed, difficulty staying on task, [and] remembering," and was "very stiff and in pain a lot." [AR at 164.] Plaintiff did not "admit" that she stopped working "because she was laid off, and not because of her medical impairments." [AR at 36.]